UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


| | | |
|---|---|---|
| STARFLEET MARINE <br> TRANSPORTATION, INC. <br> AND STARFLEET PROVIDERS, INC. | * | CIVIL ACTION |
| VERSUS | * | NO. 05-0297 |
| KOBELT MANUFACTURING COMPANY <br> LIMITED, C.L. ASSOCIATES AND GULF COAST <br> AIR & HYRDAULICS, INC. | * | SECTION "L"(5) |
| VERSUS | | |
| FREEPORT MARINE REPAIR, INC., <br> AND JAMES M. MURRAY AND GAIL MURRAY <br> D/B/A FREEPORT SHIPBUILDING | | |

ORDER AND REASONS

Before the Court is Freeport Marine Repair, Inc., James A. Murray and Gail Murray's ("Third Party Defendants") Motion to Dismiss the Third Party Complaint of Kobelt Manufacturing Company, Limited and C.L. Associates ("Third Party Plaintiffs") (Rec. Doc. No. 34). For the following reasons, the Court declines to rule on the Motion to Dismiss and orders the transfer of the third party claim to the United States District Court for the Northern District of Florida.

I. Procedural and Factual Background

The Third Party Complaint for which the Third Party Defendants seek dismissal is related to a vessel owners's action against the manufacturer and distributors of an electronic engine installed aboard the newly-constructed vessel. Plaintiffs Starfleet Marine Transportation, Inc.

("Starfleet Marine"), the operator of the vessel M/V STARFLEET PROVIDER, and Starfleet Provider, Inc. ("Starfleet Provider"), the bareboat charterer, *pro hac vice* vessel owner and wholly owned subsidiary of Starfleet Marine (together, the "Plaintiffs"), state that they executed a contract with Freeport Shipbuilding Group for the vessel's construction, requesting that the engines installed aboard the vessel be designed and manufactured by Kobelt Manufacturing Company ("Kobelt"). Plaintiffs state that Gulf Coast Air & Hydraulics, Inc. ("Gulf Coast") and C.L. Associates ("C.L.") are the authorized distributors of Kobelt engines. According to the Plaintiffs, C.L. purchased the engine controls and conducted a subsequent inspection after their installation on the vessel in December 1998. Vessel construction was completed in 1999.

Plaintiffs claim that when the vessel was put into operation, the engine controls repeatedly malfunctioned. Numerous attempts by Kobelt, Gulf Coast, and C.L. to repair the engine controls proved ineffective. On three occasions in 2000 and 2001, engine failure allegedly caused the vessel to strike platforms in the Gulf of Mexico, resulting in consequent damage to the vessel. According to the Plaintiffs, in one incident that occurred on February 3, 2002, engine failure caused a captain aboard the vessel to slip and fall while attempting to restart the vessel, resulting in personal injuries. The captain filed a Jones Act lawsuit against Starfleet Marine in the United States District Court for the Eastern District of Louisiana, Civ. Doc. No. 04-1410, and he subsequently settled his claim for $50,000. After the 2002 injury of the captain, Starfleet Marine replaced the engine aboard the vessel with another engine that was not manufactured by Kobelt. Plaintiffs state that they have experienced no problems with the new engine.

In their Complaint against Kobelt, Gulf Coast and C.L. (together, "Defendants"), filed February 2, 2005, the Plaintiffs allege claims in product liability for defective construction,

defective design, failure to warn, failure to conform to express and implied warranties, negligence and breach of contract.  Plaintiffs argue that Defendants are liable for consequential damages resulting from the defective engine controls, including claims for property damage sustained by the vessel and damages owed to the captain of the vessel for his injuries.  Plaintiffs allege that the case falls within the Court's diversity jurisdiction, as they are corporations organized and existing under the laws of South Carolina; Kobelt is a company organized and existing under the laws of Canada; Gulf Coast is a company organized and existing under the laws of Alabama; and C.L. is a company organized and existing under the laws of Florida.  The Plaintiffs state that all three Defendants conduct business within the state of Louisiana, though their principal places of business are located in their respective states of incorporation.

On April 26, 2006, Kobelt and C.L. filed a Third Party Complaint against Freeport Marine Repair, Inc. and its owners James M. Murray and Gail Murray (the "Murrays"), acting under the name of  Freeport Shipbuilding (together, "Third Party Defendants").  Kobelt and C.L. claim that the Third-Party Defendants are liable for the Plaintiffs' alleged injuries because Freeport Marine Repair, Inc. sold the vessel to the Plaintiffs and because the Murrays (acting as Freeport Shipbuilding) purchased the engine controls from C.L. and installed these parts in the vessel sold to the Plaintiffs.  The Third Party Plaintiffs claim C.L. determined that the engine controls were installed according to Kobelt's specifications, but C.L. could not have been aware of the latent defects in the vessel construction that eventually damaged the equipment.  The Third Party Plaintiffs claim that when C.L.'s mechanic inspected the engine control system after failure, he found that the reason for failure was the overheating of the engine room due to improper ventilation.  Gulf Coast and Kobelt confirmed C.L.'s findings on subsequent repair visits and also found that excessive vibration due to design or building flaw caused the engine

control's system to fail.  Kobelt and C.L. contend that all damages the Plaintiffs claim were thus directly and proximately caused by design defects in the vessel's construction by Third-Party Defendants.  They therefore claim they are entitled to complete indemnification by the Third-Party Defendants, including the costs of defense, costs of suit and attorney's fees.

## II.  Motion to Dismiss Third Party Complaint

In their Motion to Dismiss the Defendants' Third Party Complaint under Rule 12b(2) of the Federal Rules of Civil Procedure, the Third Party Defendants claim that three of the named Third Party Defendants, Freeport Marine Repair, Inc., James Murray and Gail Murray, are not proper parties to the suit and furthermore, the Court lacks personal jurisdiction over all Third Party Defendants.  The Third Party Defendants state that Freeport Marine Repair, Inc. is incorporated and has its principal place of business in Florida.  Its business deals solely with the repair of vessels, and it had no involvement with the construction or any subsequent repair of the M/V STARFLEET PROVIDER.  Freeport Shipbuilding, Inc. ("Freeport Shipbuilding") is also incorporated and has its principal place of business in Florida.  James Murray serves as its President and Gail Murray serves as secretary and treasurer, with each owning an undivided fifty percent interest in the corporation.   Both Murrays are citizens of Florida.  In May of 1998, Freeport Shipbuilding, Inc. entered into a contract with Steuart Investment Company, a Maryland corporation, to construct the M/V STARFLEET PROVIDER.  Contract negotiation and execution took place in Florida, and after the vessel was built, it was delivered and accepted by Steurt Investment Company in Florida with Freeport Shipbuilding's understanding that the vessel was to be used as a crew boat in the Gulf of Mexico.  The Third Party Defendants claim that they were unaware of the vessel's specific home-port and at no time did Freeport Shipbuilding have any direct contractual agreement with the Plaintiffs for the construction of the

-4-

vessel. Rather, the Plaintiffs purchased and/or chartered the vessel from Steuart Investment Company.

Besides the non-existence of a contractual relationship with the Plaintiffs, the Third Party Defendants also allege they have (i) never been licensed to do business in Louisiana; (ii) never incurred nor paid taxes to Louisiana; (iii) never appointed an agent for service of process in Louisiana; (iv) never had an office, place of business or assets in Louisiana; (v) never advertised in Louisiana and (vi) never had officers, agents, employees, salesman, licensees, franchisees, distributors or independent dealers in Louisiana or sent representatives, inspectors or service personnel to Louisiana. In fact, the Third Party Defendants claim that the Murrays, through their corporations, have sold only one vessel to a Louisiana resident through Freeport Shipbuilding II, Inc., an entity that is not a Third Party Defendant in this case.

Thus, the Third Party Defendants contend that minimum contacts required to establish personal jurisdiction do not exist. Furthermore, the Third Party Defendants state that the due process notion of fair play and substantial justice will also be violated if they are forced to defend themselves against the Third Party Plainitffs' suit in this forum.

Conversely, the Third Party Plaintiffs dispute the Third Party Defendants' claim that they did not have any direct contractual relationship with the Plaintiffs and that they were unaware of the vessel's home port. The Third Party Plaintiffs refer to the vessel construction contract for support. The cover page of this contract states that the vessel is to be prepared for both Steurt Investment Co. and Starfleet Marine Transportation Inc., and "Section A" to the contract lists these same two parties as the vessel's owners. Furthermore, the M/V STARFLEET PROVIDER is listed as an example of Freeport Shipbuilding's construction projects on its website. The Third Party Plaintiffs also contest the Third Party Defendants' assertion that the Murrays are not

the real parties in interest, as the Murrays registered with the Florida Department of State Division of Corporations as the owners of d/b/a Freeport Shipbuilding on August 28, 2000. Because they contest the statements made by the Third Party Defendants and claim that these statements are inconsistent with the evidence cited above, the Third Party Plaintiffs request that they be allowed to conduct limited discovery on these disputed issues.

In response, the Third Party Defendants state that the preamble of the contract clearly states that the agreement is between Freeport Shipbuilding and Steuart Investment Company, and the only signatories to the contract are these two parties. Further, Freeport Shipbuilding was paid directly by Steuart Investment Company for the vessel's construction. Thus, no direct contractual relationship exists between the Third Party Defendants and the Plaintiffs, and even if such a relationship did exist, this would be insufficient for assertion of personal jurisdiction. They therefore claim that no discovery is needed to establish whether jurisdiction exists or not.[1]

**III.    Law and Analysis**

In order for a federal district court sitting in diversity to exercise personal jurisdiction over a defendant who does not reside within the forum state, the court must establish that the particular facts of the case fall within the forum state's long-arm statute and that the assertion of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *See Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). The Louisiana long-arm statute provides that its courts may assert personal jurisdiction to the extent legally permitted

---

[1] Third Party Defendants also refer in their response to a Rule 11 Motion for Sanctions that the Third Party Plaintiffs drafted regarding the Third Party Defendants' claims as to the existence of a contractual relationship and the real parties in interest. As this Rule 11 Motion is not currently before the Court and the Court finds that it may not exercise personal jurisdiction over the Third Party Defendants, the Court will not address this issue.

under due process.  *See* La. Rev. Stat. Ann. § 13:3201(B) (West 2006);  *Nuovo Pignone, SPA v. Stroman Asia M/V, etc.*, 310 F.3d 374, 378 (5th Cir. 2002) (stating Louisiana long-arm statute and Due Process Clause inquiry "merge into one"); *Icee Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 591 (5th Cir. 2003).  Due process requires that the defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

A determination that the defendant purposefully established minimum contacts in the forum state remains the "constitutional touchstone" of whether a court's assertion of personal jurisdiction over a defendant complies with the Due Process Clause of the Fourteenth Amendment.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).  When a court makes the minimum contacts determination, it focuses on the defendant's actions.  In order to establish minimum contacts, the defendant must commit "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Id.*, 471 U.S. at 475 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)).

"Minimum contacts" may be established through acts giving rise to general or specific jurisdiction.  Specific jurisdiction is applicable where the non-resident defendant's contacts with the forum state "arise from, or are directly related to, the cause of action," whereas general jurisdiction may be established when a defendant's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic."  *Mink  v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999).

The plaintiff must establish a prima facie showing of jurisdiction if the defendant makes

a challenge to a court's *in personam* jurisdiction.  The allegations in the plaintiff's complaint are accepted as true, except as contradicted by affidavits presented by the defendant, and all such controverted allegations are resolved in the plaintiff's favor.  *Shane Matherne Enters., Inc. v. Clifford Sokolic*, 2006 U.S. Dist. LEXIS 8595, at 11-12* (E.D. La. Mar. 6, 2006) (quoting *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)).  If the plaintiff establishes a prima facie case, he or she must still prove the jurisdictional facts by a preponderance of the evidence at a pretrial evidentiary hearing or trial.  *Matherne*, 2006 U.S. Dist. LEXIS 8595, at *12.

In this case, the Third Party Plaintiffs have not met their burden of establishing that this Court may exercise personal jurisdiction over the Third Party Defendants.  Kobelt and C.L. have not established any contacts directly related to the cause of action required for specific jurisdiction.  First, the vessel construction contract does not give rise to specific jurisdiction.  When analyzing whether a contractual relationship supports the exercise of jurisdiction, the Court must look at such factors as "prior negotiations, future negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing."  *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985).  Here, the contract negotiation and execution took place outside Louisiana by parties who are not residents of Louisiana, and the contract is governed by another state's laws.  Moreover, the contract stipulated that the vessel was to be constructed, delivered and tendered in Florida.  The Third Party Defendants' contractual obligations did not require them to perform any part of the agreement in Louisiana.[2]  Second, the

---

[2]Compare to a contract between two non-residents of a forum state which calls for the manufacturer to transport a reactor on a vessel from Italy to Louisiana specifically.  In this case personal jurisdiction is deemed to exist by way of the contractual obligation.  *See Nuovo Pignone*, 310 F.3d at 379.  The Fifth Circuit distinguished such a case from where the

-8-

alleged act that gave rise to the cause of action- design or construction defect- occurred in another state.

That the Third Party Defendants knew that the Plaintiffs were the vessel's owners and the vessel was to be used in the Gulf of Mexico does not equate to the Third Party Defendants' purposeful direction of their activities towards Louisiana. The Fifth Circuit applies a stream of commerce principle in products liability and breach of warranty cases to allow the extension of personal jurisdiction over non-resident defendants who send defective products into the forum. *See Nuovo Pignone*, 310 F.3d at 380-81. "Where a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state." *Luv n' Care, Ltd. v. Insta Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (citing *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199-200 (5th Cir. 1980) and declining to follow plurality in *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 112, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987) (requiring additional action on part of defendant beyond foreseeability)). However, the Third Party Defendants did not send the vessel to Louisiana. The contract clearly specifies that the boat shall be delivered to the "Owner," Steuart Investment Company, at Freeport Shipbuilding's Shipyard located in Freeport, Florida. Moreover, this is not a case where the Third Party Defendants benefitted from the availability of Louisiana's market. In *Luv n'Care*, the Fifth Circuit reasoned that the non-resident defendant benefitted from Louisiana's market, as evidenced by the fact that the defendant filled approximately sixty-five purchase orders for items bound for Louisiana

---

manufacturer agrees to transport the reactor from Italy to Mexico, but bad weather or an accident forces it to stop in Louisiana. In that case, the manufacturer "could not have reasonably foreseen being haled into a Louisiana court." *Id.* at 397, n.2.

under a contract, sent invoices to a third party confirming the same and derived substantial revenue under the contract from its sale of products bound for Louisiana. *Luv n' Care*, 438 F.3d at 470-71. Here, besides the lack of reference to Louisiana in the contract, the Third Party Defendants state that the Murrays, in all of their years of operation, have sold only one vessel to a resident of Louisiana, and the transaction involved a different corporate entity than Freeport Shipbuilding.

The Fifth Circuit has "consistently held that 'mere foreseeability or awareness [is] a constitution ally sufficient for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce.'" *Id.* at 470 (quoting *Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993)). However, the stream of commerce in this case ended in Florida, as evidenced by the vessel construction contract's delivery provision. "Jurisdiction does not depend on the technicalities of when title passes," *Oswalt*, 616 F.2d at 197, n.8, but the lack of quantity and regularity of shipping products to Louisiana, indeed, the virtual non-existence, confirm jurisdiction is improper. *See Luv n' Care*, 438 F.3d at 471-72.

That the vessel could sail in Louisiana's waters by unilateral action of its owners as it was to be used in the Gulf of Mexico is not an adequate benchmark alone for assertion of personal jurisdiction. *See World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295-96, 100 S. Ct. 559, 62 L. Ed. 490 (1980) (rejecting argument that car's mobility by its very design and purpose made it foreseeable that car would cause injury in forum state, as Supreme Court was unwilling to endorse principle that "[e]very seller of chattels would in effect appoint the chattel his agent for service of process" and "amenability to suit would travel with the chattel" ). The possibility that the vessel would find its way into Louisiana is not critical to the due process analysis. *Id.* at 297. "Rather, it is that the defendant's conduct and connection with the forum

State are such that he should reasonably anticipate being haled into court there." *Id.* (citing *Kulko v. California Superior Court*, 436 U.S. 84, 97-98, 98 S. Ct. 1690, 56 L. Ed. 2d 132 (1978)).  The focus is on the defendant's actions and whether they are purposefully directed to the forum state, not the consumer's actions.  Thus, the Court does not have specific jurisdiction because the Third Party Defendants did not "deliver the product into the stream of commerce with the expectation that it would be purchased or used by consumers in the forum state." *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *World-Wide Volkswagen*, 444 U.S. at 298).

      Kobelt and C.L. claim that limited discovery should be conducted to establish (i) that the Third Party Defendants were well aware that the boat was constructed for the Plaintiffs for use in the Gulf of Mexico; (ii)  the Third Party Defendants knew the vessel's home port and (iii) the existence of a contractual relationship.   However, the preamble and the signature page to the contract clearly indicate that the Plaintiffs were not parties bound by the contract.  Also, as stated above, for a contractual relationship to establish personal jurisdiction, the Court must look at more than who the parties to the contract were.  The contract clearly calls for vessel construction and delivery in Florida.  The Third Party Defendants' statements are not inconsistent with the evidence presented by the Third Party Plaintiffs to warrant limited discovery on these issues.

      The Third Party Defendants also do not have minimum contacts with Louisiana by way of general jurisdiction.  Conduct incident to general jurisdiction that may indicate a non-resident defendant's intent to purposefully avail itself of the forum state's market could include designing the product specifically for the market, advertising in the forum state, establishing channels for providing regular advertising to customers in the forum state, or marketing the product through the distributor who agrees to serve as a sales agent in the forum state.  *See Asahi*, 480 U.S. at

112.  Here, the Third Party Defendants claim that they do not conduct any business in Louisiana nor do they target marketing towards the State.  They do not have offices, employees, agents, property in Louisiana, nor do they have a network of distributors to sell their products in the State.  No evidence has been presented which indicates that the Third Party Defendants design products with a specific purpose for sale in Louisiana.  The Third Party Defendants claim that their only contact related to Louisiana in all their years of business operations results from one vessel constructed for a Louisiana client in 2001.  Moreover, this vessel was not constructed by one of the Third Party Defendant corporations, but by another corporation owned by the Murrays.  Thus, the Third Party Plaintiffs have not established sufficient minimum contacts with Louisiana arising incident to either general or specific jurisdiction that would permit the Court to assert personal jurisdiction within the constitutional limits of due process.

Furthermore, the exercise of personal jurisdiction over the Third Party Defendants would not comport with traditional notions of fair play and substantial justice in this case.  Factors that the Court must consider when deciding whether the assertion of personal jurisdiction is reasonable in a given case include (i) the burden on the defendant; (ii) the forum state's interests; (iii) the plaintiff's interest in obtaining relief; (iv) the interstate judicial system's interest in achieving the most efficient resolution of a case and (v) the states' shared interest to promote fundamental substantive social policies.  *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 207 (5th Cir. 1996).

Here, the Third Party Defendants would face the burden of having to come to Louisiana to litigate the claim when they did not foresee being hailed into court in that State.  Though this alone may not be sufficient to establish that fair play and substantial justice have been prevented, when combined with the unsubstantial interest of the forum state and the Third Party Plaintiffs'

ability to litigate in another forum, the Court's assertion of personal jurisdiction over the Third Party Defendants violates due process.

The interests of Louisiana in exercising personal jurisdiction over the Third Party Defendants is not significant. Kobelt and C.L.'s claim against the Third Party Defendants is essentially an indemnity claim, and the claim does not concern any residents of Louisiana.[3] Thus, the protection and safety of Louisiana consumers is not at issue. Louisiana courts have made it clear that the interests of the State in hearing an indemnification suit between non-residents is slight. *See Ruckstuhl v. Owens Corning Fiberglass Corp.*, 98-1126, p. 25 (La. 4/13/99) 731 So.2d 881, 890.

Moreover, the Third Party Plaintiffs may litigate the indemnification claim in another forum. Though the claim by the Plaintiffs for which Kobelt and C.L. seek indemnification is currently before this Court and though Kobelt and C.L. both conduct business in Louisiana, the two parties are citizens of Canada and Florida, respectively. The Third Party Defendants are also citizens of Florida. The transaction on which the indemnification claim is based took place in another state, as the contract for vessel construction was executed in Florida and it is governed by Florida law. The construction and delivery of the vessel also took place in Florida. The engine failure took place in the Gulf of Mexico. Thus, evidence regarding indemnification and most of the parties to the suit can be found in Florida, or at least outside the State of Louisiana. Litigating the Plaintiffs' claim and the Defendants/Third Party Plaintiffs' indemnification claim in the same court may be administratively convenient for Kobelt and C.L., but the two claims are not so intertwined or inextricably linked that they cannot be heard separately and this reason

---

[3]As the only Louisiana resident, the vessel captain injured in February 2002, settled his claim with the Plaintiffs, the case no longer involves any Louisiana residents.

alone cannot outweigh the Third Party Defendants' right to due process.

As the Court may not assert personal jurisdiction over James Murray and Gail Murray even assuming they are real parties in interest, the Court declines to order limited discovery on this issue as well.

## IV.  Transfer of Venue Under 28 U.S.C. § 1404(a)

Though the Court finds that it lacks personal jurisdiction over the Third Party Defendants, the Court may authorize a change of venue under Title 28, United States Code, Sections 1404(a) or 1406(a) and transfer the Third Party Complaint to the appropriate forum. *Ellis v. Great Southwestern Corp.,* 646 F.2d 1099, 1103-07 (5th Cir. 1981) (citing *Koehring Co. v. Hyde Construction Co.*, 324 F.2d 295, 297-98 (5th Cir. 1963) (transfer of venue appropriate under § 1404(a) despite federal district court's lack of personal jurisdiction) and *Dubin v. United States*, 380 F.2d 813 (5th Cir. 1967) (federal district court's transfer of venue appropriate under § 1406(a) despite absence of personal jurisdiction)).

Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division in which it could have been brought.

28 U.S.C. § 1404(a) (2006).  The Court finds that the Third Party Plaintiffs' claims should be transferred to the United States District Court for the Northern District of Florida under Section 1404(a) due to fairness and convenience to the parties.  As mentioned previously, the vessel construction contract was negotiated and executed in Florida and governed by the laws of that State; the vessel was constructed and tendered in Florida; the Third Party Defendants are all Florida citizens; and one of the two Third Party Plaintiffs is also a citizen of that State (the other Third Party Plaintiff being a citizen of another country).  Thus, Florida is the place where the

-14-

significant events related to the Third Party Complaint occurred, where witnesses are found, and physical evidence is located. Transfer is also appropriate in the interest of justice as personal jurisdiction over the Third Party Defendants is certain in this district and resources will be conserved if personal jurisdiction is not at issue. Accordingly, the Northern District of Florida is a more appropriate district in which to litigate the Third Party Plaintiffs' claim for defense and indemnification.

V.     **Conclusion**

Because the Court finds that it may not assert personal jurisdiction over the Third Party Defendants, it declines to rule on the Third Party Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. It is ORDERED that the Third Party Claim in the above-captioned case, *Starfleet Marine Transportation, Inc., et al v. Kobelt Manufacturing Co., et al.*, Civ. Action No. 05-0297, is hereby transferred to the United States District Court for the Northern District of Florida.

New Orleans, Louisiana, this 24th day of October, 2006

_____
UNITED STATES DISTRICT JUDGE